[No. B223024. Second Dist., Div. Eight. Feb. 6, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER MURRAY, Defendant and Appellant.

## COUNSEL

Diana M. Teran and Sharon Fleming, under appointments by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUBIN, Acting P. J.**—Christopher Murray appeals from the judgment entered after he was resentenced to life without parole, plus an additional combined consecutive term of 104 years to life after he pleaded no contest to two counts of first degree murder and one count of attempted murder. Murray contends that because he was 17 at the time of the crimes, the sentence violates the state and federal constitutional prohibitions against cruel and unusual punishment. We join our First District colleagues in *People v. Blackwell* (2011) 202 Cal.App.4th 144 [134 Cal.Rptr.3d 608] (*Blackwell*) and conclude that such a sentence is constitutional. We also reject Murray's contentions that the trial court either failed to exercise or abused its discretion when sentencing him, and erred by not ordering a new probation report and by not allowing certain family members to speak on his behalf at the hearing. After modifying the judgment to account for Murray's actual custody credits, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 3, 2006, Christopher Murray shot and killed Christopher Trevizo and Demitrius Flores, and shot at but missed Flores's brother Damon. Accompanying Murray were Angelo Vasquez and Salvador Villanueva, who pointed guns at each of the Flores brothers, but fired no shots. Murray was angry with Trevizo because Trevizo stole marijuana from Murray at gunpoint a few months earlier. Murray and his companions confronted Trevizo and the Flores brothers after following them as they walked along a secluded wash.

Murray entered an open plea of no contest to the first degree murders of Trevizo and Demitrius Flores, and to the attempted murder of Damon Flores, subject to a trial on the issue of whether he was insane when the crimes

occurred.[1] After the jury found Murray had been sane, the trial court imposed the following sentence: As to each of the two murder counts, life without parole (Pen. Code, § 190.5, subd. (b)), plus another 25 years to life for a firearm use enhancement (Pen. Code, § 12022.53, subd. (d)); as to the attempted murder count, the upper term of nine years (Pen. Code, § 664, subd. (a)), plus 20 years for another firearm use enhancement (Pen. Code, § 12022.53, subd. (c)).[2] Each term was consecutive to the others.[3]

Murray appealed. We rejected his claim that the trial court should have excused a juror for harboring prejudice against the sanity defense, and that his trial lawyer was ineffective for failing to challenge that juror. We reversed and remanded for resentencing because multiple-murder special circumstances (§ 190.2, subd. (a)(3)) had been improperly imposed for each murder conviction (*People v. Danks* (2004) 32 Cal.4th 269, 315 [8 Cal.Rptr.3d 767, 82 P.3d 1249]), and because it was unclear whether the trial court had exercised its discretion under section 190.5, subdivision (b) in choosing life without parole for the murder counts instead of sentences of 25 years to life. (*People v. Murray* (May 11, 2009, B203444) [nonpub. opn.] (*Murray I*).)

On remand for resentencing, the trial court struck the second special circumstance. It resentenced Murray to: life without parole on the first murder count, with a consecutive 25 years for the gun use enhancement; a consecutive term of 25 years to life on the second murder count, plus another consecutive 25 years for the gun use enhancement; and the consecutive high term of nine years for the attempted murder count, plus another consecutive 20 years for the other gun use enhancement.

Murray contends that because he was a minor when the crimes occurred, the life without parole sentence for one murder count violates his state and federal constitutional protections against cruel and unusual punishment. He

---

[1] An open plea is one where the defendant is not offered any promises and pleads unconditionally to the maximum possible sentence, subject to the trial court's discretion to impose a lesser sentence. (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4 [79 Cal.Rptr.3d 303, 187 P.3d 30].) By contrast, a plea bargain is like an enforceable contract, with the defendant pleading in exchange for assurances as to the length of his sentence. (*People v. Blount* (2009) 175 Cal.App.4th 992, 997 [96 Cal.Rptr.3d 684].) There was apparently some question in the trial court's mind as to whether Murray entered a plea bargain for the life without parole sentences, a subject we discuss in detail in connection with Murray's contention that the trial court failed to exercise its discretion when choosing life without parole for one of the two murders counts.

[2] All further undesignated section references are to the Penal Code.

[3] Vasquez and Villanueva were convicted as aiders and abettors of the murders of Trevizo and Demitrius Flores, and of the attempted murder of Damon Flores, and we affirmed those judgments. (*People v. Vasquez* (May 6, 2010, B205698) [nonpub. opn.].)

also contends that even if the life without parole sentence is reduced to a term of 25 years to life, he will still face a de facto sentence of life without parole that is constitutionally prohibited. Murray also challenges the sentence on the following grounds: (1) the trial court incorrectly believed it was enforcing the terms of a plea agreement rather than sentencing on an open plea when it imposed the life without parole sentence, and therefore failed to exercise its discretion to consider a sentence of 25 years to life on that charge; (2) even if the trial court exercised its discretion when resentencing him, the court abused that discretion by imposing the no-parole sentence, by ordering his punishment to run consecutively, and by imposing the high term sentence on the attempted murder count; (3) the court erred by not ordering a new probation report and by refusing to allow some of his family members to address the court; (4) the cumulative effect of these errors compels reversal; and (5) the abstract of judgment should be modified to include 1,429 days of actual custody credits.

## DISCUSSION

1. *The No-parole Sentence Is Not Unconstitutional*

    A. *No Categorical Bar for Life Without Parole Sentences for Minors*

        Murray was sentenced on count 1 pursuant to section 190.5, subdivision (b), which provides that minors who are 16 or 17 and who are convicted of a special circumstance murder under section 190.2 should be given a no-parole life sentence or, in the trial court's discretion, a sentence of 25 years to life. Under this section, the no-parole life sentence is the presumptive choice. (*People v. Guinn* (1994) 28 Cal.App.4th 1130, 1145 [33 Cal.Rptr.2d 791].) Because Murray committed multiple murders, special circumstances existed (§ 190.2, subd. (a)(3)), making him eligible for the no-parole life sentence.[4]

        In *Graham v. Florida* (2010) 560 U.S. ___, ___, ___ [176 L.Ed.2d 825, 130 S.Ct. 2011, 2023, 2034] (*Graham*), the United States Supreme Court announced a categorical rule prohibiting no-parole life sentences for minors who were convicted of nonhomicide offenses. *Graham*'s holding was based on the following: (1) scientific studies showing fundamental differences between the brains of juveniles and adults; (2) a juvenile's capacity for

---

[4] Once the trial court struck the second special murder circumstance, the no-parole life sentence provided by section 190.5 for that count was no longer available as a sentencing option.

change as he matures, which shows that his crimes are less likely the result of an inalterably depraved character; (3) the notion that it is morally misguided to equate a minor's failings with those of an adult; and (4) the fact that even though nonhomicide crimes may have devastating effects, they cannot be compared to murder in terms of severity and irrevocability. (*Id.* at pp. ___-___ [130 S.Ct. at pp. 2026–2027].)

Murray contends that we should extend *Graham* and hold that no-parole life sentences for juvenile offenders who commit murder categorically violate both the Eighth Amendment to the United States Constitution (no cruel and unusual punishment shall be inflicted) and article I, section 17 of the California Constitution (no punishment that is cruel *or* unusual).[5] We decline to do so.

In *Blackwell, supra,* 202 Cal.App.4th 144, the First District considered the same argument in the case of a 17 year old who had been convicted of first degree murder during an attempted robbery inside the victim's home. The *Blackwell* court concluded that *Graham*'s rationale did not apply because *Graham*'s holding was expressly limited to juveniles convicted of nonhomicide offenses. (*Blackwell,* at p. 156.) This held true, the *Blackwell* court concluded, even if, as the defendant contended, he had been convicted as an aider and abettor because (1) juveniles convicted of murder cannot be compared to those who commit lesser offenses and (2) the jury must have found that the defendant either intended to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life. (*Id.* at p. 157.) We believe the *Blackwell* court was correct, and we choose to follow that decision.

As the *Blackwell* court noted, *Graham* was expressly limited to nonhomicide offenses. Murray was convicted as the actual perpetrator of multiple first degree murders and the attempted murder of a third person. The *Graham* court recognized that its rule made sense because "defendants who do not kill, intend to kill or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." (*Graham, supra,* 560 U.S. at p. ___ [130 S.Ct. at p. 2027].) In *Roper v. Simmons* (2005) 543 U.S. 551 [161 L.Ed.2d 1, 125 S.Ct. 1183] (*Roper*), the Supreme Court established a categorical prohibition against capital punishment for juveniles convicted of homicide. In dismissing the penological

---

[5] Murray contends the categorical rule applies even if we reverse the no-parole life sentence on count one and reduce it to 25 years to life because the combined effect of his several consecutive sentences amounts to a de facto no-parole life sentence. Our discussion and holding apply with equal force to this contention.

justification for the death penalty in such cases, the *Roper* court said "it is worth noting that the punishment of life imprisonment without the possibility of parole is itself a severe sanction, in particular for a young person." (*Id.* at p. 572.) As Chief Justice Roberts noted in his concurring opinion in *Graham*, "*Roper* explicitly relied on the possible imposition of life without parole on some juvenile offenders." (*Graham, supra,* 560 U.S. at p. ___ [130 S.Ct. at p. 2039] (conc. opn. of Roberts, C. J.).) And, as Justice Thomas pointed out in his dissent, the *Graham* majority held that a life without parole sentence on a minor was cruel and unusual punishment "unless he has committed a homicide." (*Id.* at p. ___ [130 S.Ct. at p. 2043] (dis. opn. of Thomas, J.).) Taken together, these statements strongly suggest that to the United States Supreme Court, a no-parole life sentence for juvenile murderers does not violate the Eighth Amendment.[6] (See *Harris v. Wright* (9th Cir. 1996) 93 F.3d 581, 584 [no-parole life sentence for minor convicted of murder in Wn. not cruel and unusual punishment].) We agree, and hold that *Graham* should not be extended to minors convicted of murder.

Murray contends his reasoning applies with equal force to the California Constitution, but cites no authorities to support his claim. Because this contention rests on the same logic as does his Eighth Amendment argument, we reject it for the same reason.

### B. *No-parole Life Sentence Was Not Disproportionate*

Murray also contends that his no-parole life sentence was unconstitutional because it was disproportionate when the nature of his crimes is measured against various mitigating circumstances. These mitigating circumstances include his youth; his lack of a prior criminal record; and, as evidenced by letters submitted on his behalf, his true remorse for what he had done and his excellent behavior while in prison.

█ Under the Eighth Amendment, the courts examine whether a punishment is grossly disproportionate to the crime. We consider all the circumstances of the case, beginning with the gravity of the offense and the severity of the sentence. (*Graham, supra,* 560 U.S. at pp. ___–___ [130 S.Ct. at

---

[6] Murray relies on *People v. Mendez* (2010) 188 Cal.App.4th 47 [114 Cal.Rptr.3d 870], where the juvenile defendant received a sentence of 84 years to life, which the Court of Appeal found was an unconstitutional de facto no-parole life sentence. His reliance is misplaced because *Mendez* involved nonhomicide offenses. The issue presented in *Mendez* is currently before the California Supreme Court in *People v. Caballero,* review granted April 13, 2011, S190647; *People v. Ramirez,* review granted June 22, 2011, S192558; and *People v. J.I.A.,* review granted September 14, 2011, S194841.

pp. 2021–2022].) In the rare case where this threshold comparison raises an inference of gross disproportionality, the court then compares the defendant's sentence with those received by others in both the same state and other states. If this comparative analysis confirms the initial belief that the sentence is grossly disproportionate, then it is cruel and unusual. (*Id.* at p. ___ [130 S.Ct. at p. 2022].)[7]

■ Under the California Constitution, a sentence is cruel or unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity. Our review under this test includes an examination of the nature of the crime and the character of the defendant, and comparisons of the penalties in this state for more serious crimes and those imposed in other states for the same crime. (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921]; *People v. Haller* (2009) 174 Cal.App.4th 1080, 1092 [94 Cal.Rptr.3d 846].)

■ Murray's no-parole life sentence does not raise an inference of gross disproportionality under the Eighth Amendment. Even taking into account the mitigating factors of his age, previously unblemished criminal record, commendable prison behavior, and otherwise praiseworthy character traits, the record shows that Murray followed his victims into a secluded area where, backed by two armed accomplices, he gunned down his helpless victims. For such a crime, a no-parole life sentence is not disproportionate. (*Harris v. Wright, supra,* 93 F.3d at p. 585.)

Even if we were to make the initial assessment that Murray's sentence raised an inference of gross disproportionality, he has failed to offer any comparison of the punishment in both California and other states for those who commit multiple murders. We therefore alternatively hold that the issue was waived. (*People v. Beltran* (2000) 82 Cal.App.4th 693, 697–698, fn. 5 [98 Cal.Rptr.2d 730].) We reject Murray's claim of disproportionality under the California Constitution for the same reasons.

2. *The Trial Court Properly Exercised Its Discretion When It Sentenced Murray*

A. *Murray Entered an Open Plea*

Murray's plea was taken by a different judge than the one who presided over Murray's trial and sentencing. When the plea was taken, that judge told Murray that he was entering an open plea, while the prosecutor told him

---

[7] Thirty-seven states and the District of Columbia permit no-parole life sentences in some circumstances for juvenile offenders who commit nonhomicide crimes. (*Graham, supra,* 560 U.S. at p. ___ [130 S.Ct. at p. 2023].)

no-parole life sentences represented the maximum term should he be found sane.[8] Consistent with this, the form plea agreement that Murray signed states that Murray's maximum term could be no-parole life sentences for the murder counts. However, the form also contained handwritten statements that the maximum sentences would be imposed if he were found sane. Directly across from one of those statements was a box that had been both crossed out and initialed by Murray next to it. Neither the prosecutor nor defense counsel objected to or sought to clarify the judge's statement that Murray was entering an open plea. The minute order from that hearing states that Murray was "informed that this is an open plea that could result in a 79 year sentence plus two life sentences consecutive to two life without possibility of parole sentences."

Respondent has never contended that Murray entered anything other than an open plea. In the procedural history portion of its appellate brief in *Murray I*, respondent said that Murray "was informed that the plea was an open plea that could result in [the maximum sentence]," citing to the minute order from the plea hearing to support this statement. Respondent opposed on the merits Murray's appellate contention that the trial court did not exercise its discretion, and never contended that the plea agreement established the length of Murray's sentence. Likewise, in this appeal, respondent has never challenged Murray's factual assertion that he entered an open plea.

### B. *Even Though the Trial Court Believed Murray Had Made a Plea Bargain, It Still Exercised Its Sentencing Discretion*

When the judge who presided over the trial resentenced Murray, he said that Murray had entered a plea bargain by which he agreed to accept the maximum sentence of life without parole should a jury find him sane.[9] At that

---

[8] At the start of the September 20, 2007 plea hearing, the trial court began by saying, "I have a plea form here. It's my understanding that you're entering a plea open and your maximum is life without possibility of parole on these matters. And you're entering a plea open to this case; is that correct?" After Murray answered yes, the prosecutor asked Murray whether he waived his various rights. The prosecutor then told Murray that "[a]s a consequence of your plea the maximum sentence that can be imposed is 79 years in addition to two life sentences to run consecutive to that term and an additional of [*sic*] two sentences of life without the possibility of parole to run consecutive to that." The prosecutor then went on to caution Murray that if he were ever paroled, his parole term would be a life sentence.

[9] We believe the trial court's apparent mistake was caused by several factors. First, the form plea agreement is unclear because even though it states that Murray's maximum term could be no-parole life sentences for the murder counts, there are boxes on the form next to handwritten statements that such sentences would be imposed if he were found sane. Those boxes were both initialed by Murray and crossed out. Second, the plea was taken by a different judge. Third, at the initial sentencing hearing in *Murray I*, defense counsel told the trial court it had no discretion because the terms of the plea agreement called for the maximum sentence. Fourth, although the prosecutor in *Murray I* did not claim that the plea agreement had that

resentencing hearing, the trial court said that in *Murray I*, this court had overlooked the plea form that was "clearly in the court file," that as a result of the plea agreement the trial court did not have to consider any mitigating or aggravating factors, and that our decision in *Murray I* looked like an attempt to "fabricate a modification" to the rule that the terms of a plea bargain determine a defendant's sentence.[10] Murray contends this shows the trial court acted under the mistaken belief that it had no discretion to do anything other than impose a no-parole life sentence, run his sentences consecutively, and impose the high term sentence on the attempted murder count. The record shows otherwise.

The trial court stated that it had "in practicality" exercised its discretion the first time it sentenced Murray, noting that it had considered various factors: that the crime was senseless; that Murray had lured the victims to a secluded location; that two guns were used; and that the conduct was extremely violent and coldblooded. The court said it had also considered the mitigating factors of Murray's age and previously clean criminal record. The court added that there was "no basis for exercising discretion to impose 25 years to life," and that Murray "clearly deserves life without the possibility of parole." Even though the trial court apparently disagreed with parts of our decision in *Murray I*, it said at the resentencing hearing, "[W]hat we have as to count 1, the court has the discretion under [section 190.5, subdivision (b)] to choose either life without possibility of parole or 25 years to life because the defendant was 17 at the time. [¶] The court, for reasons previously given, will sentence the defendant to life without possibility of parole . . . ." It then imposed the high term sentence of nine years on the attempted murder count, and ordered all sentences to run consecutively, as it had done before. Therefore, despite the trial court's mistaken misgivings about the nature and effect of our decision in *Murray I*, it quite clearly acknowledged and exercised its sentencing discretion.

---

effect, and asked the court to impose the maximum sentence, it did not correct the misunderstanding. At the resentencing hearing, neither defense counsel nor the prosecutor challenged the trial court's characterization of the plea.

[10] Based on the record and the state of the arguments before us in *Murray I*, we were not asking the trial court to depart from the rule that it must sentence in accord with the terms of a plea bargain. Instead, we were aware that the plea was an open plea, although we did not say so in our opinion because the nature of the plea was not at issue. As we more formally acknowledge here, because there was an open plea, the trial court was required to exercise its discretion under section 190.5, subdivision (b). Because the record was unclear as to whether the trial court had exercised its sentencing discretion, at the first hearing, we remanded so the record would be clear that the trial court was doing so when it resentenced Murray.

288

## C.   The Trial Court Did Not Abuse Its Sentencing Discretion

Murray contends that even if the trial court was aware of its discretion, it abused that discretion by imposing a no-parole life sentence and by running all his terms consecutively. As for the life sentence, Murray contends the trial court was under a misimpression about some of the underlying facts and overlooked the mitigating factors, including his age, his change of plea from not guilty to no contest, his remorse, and the evidence that he acted out of fear because Trevizo had threatened him in the past. We disagree.

First, even though the record does not indicate that Murray had lured Trevizo to a secluded area, the error was meaningless in light of the true facts—that Murray spotted Trevizo and the Flores brothers entering a secluded area and followed them there, where he confronted and killed Trevizo and Demitrius Flores, and tried to kill Damon Flores. Because Murray was the aggressor, this also undercuts his contention that he acted out of fear. Second, the trial court said it was aware of Murray's age. Third, even though the trial court did not allow some of Murray's advocates to speak at the hearing (an issue we discuss below), when the court denied that request, it also said, "You have attached documentation to your moving papers," indicating that it had read the letters in support of Murray's bid for a lighter sentence. Finally, Murray committed two coldblooded murders and attempted another. Based on this record, and given that the no-parole life sentence was the presumptive choice, we hold that the trial court did not abuse its discretion by imposing that sentence under section 190.5, subdivision (b).

The same is true of the trial court's decision to impose consecutive sentences on the two murder counts. (*People v. Calderon* (1993) 20 Cal.App.4th 82, 87 [26 Cal.Rptr.2d 31] [consecutive sentences proper for acts of violence against multiple victims on one occasion].)[11]

---

[11] Respondent contends the issues of consecutive sentencing and the appropriateness of the high term for the attempted murder count were outside the scope of our remand order in *Murray I*. Respondent also contends that Murray waived the consecutive sentencing issue because it was expressly withdrawn as an issue on appeal in *Murray I*, and waived the attempted-murder high term issue because it was never raised as an issue in the previous appeal. Respondent also contends that both issues were waived because they were not raised at the resentencing hearing. (*People v. Velasquez* (2007) 152 Cal.App.4th 1503, 1511 [62 Cal.Rptr.3d 164].)

We agree that any issues concerning the sentence on the attempted murder count were waived because they were not raised in *Murray I*. Murray contends he received ineffective assistance of counsel as a result. Given the trial court's adamant belief that the maximum possible sentence was appropriate as to all counts, even if Murray received ineffective assistance, we alternatively decline to reverse because he cannot show a reasonable probability of a different outcome. (*People v. Medina* (2009) 171 Cal.App.4th 805, 819 [89 Cal.Rptr.3d 830].) As for the consecutive sentencing issue, the issue was withdrawn in *Murray I* only insofar as Murray contended the trial court erred in sentencing him to two no-parole life terms.

## 3. *Murray's Due Process Rights Were Not Violated*

Murray contends that the trial court denied his due process rights when it resentenced him because it did not exercise an informed discretion. (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686].) Murray bases this contention on the following: (1) the trial court did not obtain a new probation report; (2) the court misunderstood the scope of its discretion because it believed it was bound by the terms of a plea agreement; and (3) the trial court did not let him present mitigating evidence from family members.

■ As to the first, because Murray committed murder while personally using a firearm, he was not eligible for probation. (§ 1203.06, subd. (a)(1)(A).) Because he was not eligible for probation, no supplemental probation report was required. Although a probation report is often advisable where a defendant is ineligible for probation, it was within the trial court's discretion whether to order one. (Cal. Rules of Court, rule 4.411(a)–(c); *People v. Johnson* (1999) 70 Cal.App.4th 1429, 1431–1433 [83 Cal.Rptr.2d 423].) Murray does not show on appeal how the trial court abused that discretion, and we therefore hold that no error occurred.[12] As to the second point, as we have already discussed, despite the error about the nature and effect of Murray's plea, the trial court in fact properly exercised its sentencing discretion. We turn now to the mitigation evidence issue.

At the resentencing hearing, defense counsel said that Murray's mother and grandfather "wish[] to address the court briefly." Argument was heard on other issues, and, toward the end of the hearing, defense counsel asked the court when it "would like to hear from the family members." The trial court said it would not do that because it "would be outside the record that was presented to me by the court of appeal[]," and because under section 1191.1, only the victim or the victim's relatives were allowed to testify. The trial court added that it had the letters from Murray's family members and other

---

We do not believe our remand foreclosed the possibility of raising this issue below. However, the issue was waived because defense counsel did not raise it at the resentencing hearing. (*People v. Velasquez, supra*, 152 Cal.App.4th at p. 1511.) As with the attempted-murder high term issue, Murray contends he received ineffective assistance of counsel as a result. For the same reasons, however, we alternatively hold that a more favorable outcome was not reasonably probable had the issue been raised.

[12] Because no such report was requested by defense counsel before the hearing, we alternatively hold that the claim of error was waived. (*People v. Johnson, supra*, 70 Cal.App.4th at pp. 1431–1432.)

supporters, and acknowledged that defense counsel had attached that documentation to her sentencing memorandum.

■ Section 1191.1 does allow for victim impact statements from the victim and his relatives, and Murray contends that section should be construed to permit statements by a defendant's supporters at a sentencing hearing. ■ As respondent points out, section 1204 allows a defendant to call witnesses to testify at the sentencing hearing about any mitigating circumstances. However, that section requires sworn testimony (*People v. Evans* (2008) 44 Cal.4th 590, 598–599 [80 Cal.Rptr.3d 174, 187 P.3d 1010]), something Murray's defense counsel did not offer to provide. Instead, she asked that two witnesses be allowed to address the court. Therefore, the ruling itself was proper under section 1204. (*People v. Evans*, at pp. 599–600 [no due process right to present unsworn statements].)

Furthermore, even though sworn testimony is required, unsworn written statements are allowed. (Cal. Rules of Court, rule 4.411.5(a)(4); *People v. Evans, supra*, 44 Cal.4th at p. 598.) Murray filed letters of support with the court, which was part of the reason why the trial court denied his request. We infer from this that the court in fact read those letters. The trial court had discretion to refuse to hear testimony that merely restated information contained in the defendant's written statements of mitigation. (44 Cal.4th at p. 599.)

Finally, Murray does not contend how having his mother or grandfather address the trial court would have added anything material to the letters or that it would have led the trial court to impose a lesser sentence. Even if error occurred, it is therefore harmless under either the state law standard of showing a different result was reasonably probable (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), or under the federal constitutional standard of being harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]).

4. *The Judgment Should Be Modified to Reflect Murray's Custody Credits*

Murray contends the trial court erred because it failed to recalculate and award his actual custody credits of 1,429 days. Respondent contends that the total is 1,428 days, but otherwise agrees with this contention. In his appellate reply brief, Murray agreed with respondent's calculation. We shall order the judgment modified accordingly.

## DISPOSITION

The matter is remanded to the trial court with directions to modify the abstract of judgment to state that Murray has earned 1,428 days of actual custody credits. The trial court is directed to forward the modified abstract to the Department of Corrections and Rehabilitation. The judgment as modified is affirmed.

Flier, J., and Grimes, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 11, 2012, S200489.