Filed 5/14/15  P. v. Lazaro CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B255702 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA403521) |
| v. | |
| FELIX DE JESUS LAZARO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ronald S. Coen, Judge.  Affirmed.

The Defenders Law Group, Carlos Perez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General,  Lance E. Winters, Senior Assistant Attorney General, Yun K. Lee and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Felix de Jesus Lazaro (defendant) challenges his convictions of eight different sex crimes against a girl under the age of 10 and the ensuing sentence of 180 years to life on a number of grounds. We conclude that his arguments on appeal are without merit, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

When Jennifer F. (Jennifer) was three years old, defendant began to "bite" and lick her vagina. Over the next six years, he exposed himself to her, masturbated in front of her until "white stuff came out," kissed and fondled her, performed oral sex on her, forced her to perform oral sex on him, and repeatedly penetrated her with his penis. Although Jennifer felt pain "every single time" he entered her, he ignored her protests and overcame her efforts to push him away.

Defendant gained access to Jennifer through her parents, portraying himself as a healer with a spiritual "gift" who could alleviate pain through candlelit massage. He started massaging Jennifer when she was just three months old. He got Jennifer alone by sending her mother to church to pray and retrieve the holy water necessary to ward off malevolent spirits, and threatened Jennifer that harm would befall her mother and father if she told anyone about his sexual conduct. Indeed, defendant used the same technique—the threat of witchcraft-induced harm—to coerce Jennifer's mother into having sex with him and keeping it secret. Defendant's acts came to light after a surgeon treating Jennifer for a slip and fall noticed that Jennifer had injuries consistent with sexual trauma.

The People charged defendant with six counts of sex or sodomy with a child age 10 or under (Pen. Code, § 288.7, subd. (a))[1] and two counts of oral copulation or sexual penetration with a child age 10 or younger (§ 288.7, subd. (b)).

At trial, Jennifer testified to the acts set forth above and was able to give a detailed description of defendant's penis. Jennifer's account was corroborated by statements

---

[1]     All further references are to the Penal Code unless otherwise indicated.

Jennifer had made to a nurse, to her foster mother (with whom she was placed after the abuse surfaced), and to her mother. The People also introduced defendant's taped interview with police, in which he confessed to having sex with Jennifer "five or six times" and to performing oral sex on her, although he stated she had been the one to seduce him when she was six years old by asking him "what it was like to have sex" and by climbing atop his erect penis.

The jury convicted defendant on all counts, and the trial court sentenced him to a total of 180 years in state prison (25 years to life on each of six counts of sexual intercourse and sodomy with a child age 10 or under, and 15 years to life on both counts of oral copulation and sexual penetration with a child age 10 or under), each to be served consecutively.

Defendant appeals.

## DISCUSSION

### I.     Testimony of Foster Mother

At trial, the People sought to admit testimony of Jennifer's foster mother as to what Jennifer had told her under the "spontaneous statement" exception to the hearsay rule (Evid. Code, § 1240), and alternatively as a statement describing child abuse made by a child under age 12 (*Id.*, § 1360). Finding that the statements were not admissible under section 1240 as spontaneous statements because "there was time to reflect" between the incidents of abuse and Jennifer's statements to her foster mother, the court admitted the testimony under section 1360 citing several indicators of reliability and trustworthiness as a basis for the ruling.

Defendant now claims that the trial court erred in admitting the foster mother's testimony about Jennifer's statements because there were not sufficient indicators of reliability to warrant admissibility under Evidence Code section 1360.[2] The People argue that defendant has forfeited this claim because he failed to object below. (Evid. Code,

---

[2]     During the hearing, defense counsel conceded that the statements were admissible under section 1360.

§ 353; *People v. Fuiava* (2012) 53 Cal.4th 622, 721.)  Regardless, defendant's claim fails on the merits.

Evidence Code section 1360 provides an exception to the general exclusion of hearsay evidence in criminal cases for statements made by a child under age 12 describing an act of child abuse as long as three conditions are met: (1) the court finds "'that the time, content, and circumstances of the statement provide sufficient indicia of reliability'"; (2) the child either testifies at the hearing or there is corroborating evidence of the hearsay statements; and (3) the proponent gives notice to the adverse party that it intends to use the statement at trial.  (*People v. Brodit* (1998) 61 Cal.App.4th 1312, 1329 (*Brodit*); Evid. Code, § 1360, subds. (a) & (b).)  We review a trial court's admission of evidence under section 1360 for abuse of discretion.  (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367.)

In determining whether the "time, content, and circumstances of the statement provide sufficient indicia of reliability," a trial court may consider reliability factors including, but not limited to, "(1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) use of terminology unexpected from a child of that age; and (4) lack of a motive to fabricate" to ensure that the statement is trustworthy and satisfies the Sixth Amendment's confrontation clause.  (*People v. Eccleston* (2001) 89 Cal.App.4th 436, 445 (*Eccleston*).)

Here, the trial court conducted a hearing outside the presence of the jury (Evid. Code, § 1360, subd. (a)(2)), and in admitting the statements under section 1360, cited the factors enumerated in *Eccleston*, *supra*.  The trial court noted that the spontaneity and consistent repetition of Jennifer's story, her mental state, her use of "terminology unexpected from a child such in age," and her lack of motive to fabricate all indicated that her statements were reliable.  Defendant argues that it is not clear from the evidence where Jennifer learned the advanced sexual terminology, and suggests she may have learned these terms "from those attempting to solicit a story from her about [defendant]." The record reflects no evidence to support this contention, and it is not unreasonable that

4

the trial court believed the mature language bolstered the reliability of Jennifer's statements. (See *Brodit*, *supra*, 61 Cal.App.4th at p. 1330 [reliability of child's statements supported by the fact that her "description of the sexual acts showed a knowledge of such matters far beyond the ordinary familiarity for her age."].)

Defendant argues that statements admitted under Evidence Code section 1360 must also be corroborated to "protect against the possibility of fabrication by very young witnesses whose out-of-court statements are insulated from the rigors of cross-examination" (*In re Lucero L.* (2000) 22 Cal.4th 1227, 1248), and that mother's initial denial of knowledge of any abuse to police makes mother's later statements inadequate to corroborate Jennifer's report to foster mother. Where a child testifies at trial, there is no requirement that her statement be corroborated because there is an opportunity for defendant to cross-examine her (§ 1360, subd. (2) ["the child either testifies at the hearing *or* there is corroborating evidence of the hearsay statements"], italics added; *Brodit*, *supra*, 61 Cal.App.4th at p. 1329.) Even so, multiple sources of evidence corroborate Jennifer's account of the abuse, including the testimony of mother, foster mother, the hospital nurse, and defendant's own statements to police in a taped interview.

Defendant lastly argues that Evidence Code section 1360 is limited to "child abuse," and that the definition of "child abuse" set forth in that section does not specifically cross reference either of the two Penal Code subdivisions he is charged with violating—namely, sections 288.7, subdivisions (a) and (b). (See Evid. Code, § 1360, subd. (c).) Section 1360 nevertheless defines "child abuse" as "any of the acts described in [Penal Code] Section 11165.1" (*ibid.*), and section 11165.1 reaches "the intentional touching of the genitals or intimate parts . . . of a child . . . for the purposes of sexual arousal or gratification" (Pen. Code § 11165.1, subd. (b)(4)). Defendant's conduct meets this definition.

The trial court's admission of the foster mother's testimony was not an abuse of discretion.

## II. Sufficiency of the Evidence

Defendant asserts there was insufficient evidence to support a reasonable jury's finding that he was guilty, but fails to make any argument on this point. In reviewing a sufficiency of the evidence claim, we evaluate the whole record in the light most favorable to the verdict to determine whether it contains substantial evidence that is "reasonable, credible and of solid value" such that a reasonable jury could convict him beyond a reasonable doubt. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069; *People v. Leon* (2010) 181 Cal.App.4th 452, 463 (*Leon*).)

At trial, Jennifer provided detailed testimony of the ongoing abuse and threats over the span of six years. This evidence was corroborated through the testimony of a number of witnesses, including the foster mother to whom Jennifer reported the abuse; the surgeon and nurse regarding Jennifer's statements of abuse, her fearful and uncomfortable demeanor, and her physical injuries; and Jennifer's mother, who personally observed Jennifer's discomfort around defendant, to whom Jennifer had previously reported the sexual abuse and threats by defendant, and who herself was subjected to defendant's forcible sexual misconduct and threats of violence. Finally, defendant confessed to forcing Jennifer to have sex and to putting his mouth on her vagina on numerous occasions. The only evidence that contradicts this overwhelming evidence of defendant's guilt was his testimony at trial where he recanted his earlier (taped) statements, claiming that he was forced to confess under duress and threats by the detectives, and said that Jennifer was lying. It is not for us to weigh the credibility of witnesses, and we must uphold the verdict if the evidence supports a rational inference that defendant committed the acts alleged against him. Here, it does.

## III. Request for New Attorney

Six weeks before trial, defendant moved to substitute retained counsel for appointed counsel because he felt he was being pressured to accept a plea bargain. The trial court granted the motion, but warned defendant and newly retained counsel that any future request to substitute counsel would be considered a delay tactic and would not be

granted. On the afternoon that trial was set to begin, as the sworn jury panel was waiting next door, defendant told the court that he wanted to accept a plea offer of 26 years. When the trial court asked whether his plea was voluntary, he said "no" and requested a new attorney, again claiming he was being pressured to plea. The trial court denied the request on the grounds that it was untimely and would result in a "disruption of the orderly process of justice," causing undue delay and harm to the young victim.

Defendant argues that his request to discharge his retained attorney was improperly denied because he was entitled to a hearing under *People v. Marsden* (1970) 2 Cal.3d 118, and that the denial otherwise violated his right to the attorney of his choice under the Sixth Amendment of the U.S. Constitution. We disagree.

Under *Marsden*, a defendant is """"entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in"""" significant and potentially prejudicial irreconcilable conflict. (*People v. Maciel* (2013) 57 Cal.4th 482, 513, quoting *People v. Taylor* (2010) 48 Cal.4th 574, 599 (*Maciel*).) But where counsel is *retained* rather than appointed, the trial court is only required to determine whether a motion to discharge is "timely"—that is, whether it will result in """"disrupt[ion] of the orderly processes of justice"""" (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1411, quoting *People v. Ortiz* (1990) 51 Cal.3d 975, 983) when the totality of the circumstances in the particular case is taken into account (*ibid.*; *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 152). We review the trial court's denial of a motion to relieve retained counsel for abuse of discretion. (*People v. Verdugo* (2010) 50 Cal.4th 263, 311.)

The trial court properly concluded that defendant's request was untimely. As the trial court noted, the motion was made after the jury venire was empaneled, sworn, and "seconds from [entering] the courtroom." Additionally, the court cited the standard under *Maciel*, *supra*, stating that "counsel appear[s] to be diligent at all stages of the matter," and that new counsel would require substantial time to familiarize with the "complex case," resulting in further delay. (See *Maciel*, at pp. 512-513.) Finally, the court noted

7

that the victim was under age 10 and that delay would be harmful to her as well. Defendant suggests for the first time in his reply brief that he merely wanted another attorney to explain the plea to him, but the record does not support this assertion.

In sum, there was no abuse of discretion.

## IV. Consecutive Sentences

At sentencing, the trial court sentenced defendant to the mandatory indeterminate term on each count, to be served consecutively for a total of 180 years to life, reasoning "these crimes were all committed at different times and different dates and not in a single period of aberrant behavior." Defendant challenges his sentence on three grounds: (1) the trial court abused its discretion in imposing consecutive sentences; (2) defendant was entitled to have a jury make the factual findings warranting the imposition of consecutive sentences; and (3) his lengthy sentence constitutes cruel and/or unusual punishment.

### A. *Consecutive sentences*

Defendant first attacks the trial court's decision to impose consecutive sentences. Section 669 gives a trial court broad discretion to decide whether to impose sentences for multiple convictions under section 288.7 concurrently or consecutively. (*Leon*, *supra*, 181 Cal.App.4th at p. 467.) In exercising this discretion, the court is to consider whether the crimes and their objectives were predominantly independent of each other, involved separate acts or threats of violence, and were committed at different times or separate places rather than being committed "so closely in time and place as to indicate a single period of aberrant behavior," as well as any other circumstances in aggravation or mitigation. (Cal. Rules of Court, rules 4.425(a) & (b).) In making this determination, a trial court "'may consider aggravating and mitigating factors, but there is no requirement that, in order to justify the imposition of consecutive terms, the court find that an aggravating circumstance exists.'" (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1324 (*Crabtree*).) We review a trial court's decision to impose consecutive sentences for abuse of discretion. (*People v. Shaw* (2004) 122 Cal.App.4th 453, 458.)

8

Defendant argues that the court improperly sentenced him to consecutive terms for each of his convictions under section 288.7, subds. (a) and (b) because he was sentenced without "any type of hearing to determine elements of aggravation and mitigation," or a finding that the conduct underlying each count was a "separate and distinct act."[3]

Contrary to defendant's contention, the trial court (pursuant to Cal. Rules of Court, rule 4.425) made a finding that each crime was committed at different times and different dates and was thus not indicative of aberrant behavior. Additionally, the trial court cited a second aggravating consideration—namely that "defendant robbed a baby of her innocence," reflecting the court's finding that defendant's acts were so egregious that they inflicted immeasurable mental and emotional harm on a "particularly vulnerable" victim. (Cal. Rules of Court, rule 4.421(a)(3); *People v. Huber* (1986) 181 Cal.App.3d 601, 629.) The court is not required to make multiple findings on the record, rather "one relevant and sustainable fact may explain a series of consecutive sentences." (*People v. Scott* (1994) 9 Cal.4th 331, 350, fn. 12; accord, *Crabtree*, *supra*, 169 Cal.App.4th at pp. 1324-1325 ["reasons given for imposing a consecutive sentence need only refer to the 'primary factor or factors' that support the decision"].)

Defendant contends that the trial court failed to consider mitigating factors, namely—that he had no prior criminal history and that he "voluntarily acknowledged wrongdoing at an early stage" in the process when he was interviewed by police. Leaving aside the fact that at trial defendant recanted his admissions and claimed that police had forced him to confess, defense counsel offered "no comment" when asked to

---

[3] Defendant also alludes that section 654 prohibits the trial court from imposing multiple sentences for separate offenses that arise out of an indivisible "course of conduct" without an additional finding that each act was separate and distinct. This argument is misguided. This is not a case where a defendant is charged under multiple provisions for a single act of sexual assault; rather, defendant committed the acts charged under section 288.7, subds. (a) & (b) on different dates with time to reflect and form new intent in between, and the trial court so noted. (See, e.g., *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006 [separate punishment for lewd conduct impermissible where it was the basis for aggravated sexual assault convictions].)

make a statement during sentencing, and the trial judge imposed the sentence after reviewing the preconviction report with full knowledge of defendant's criminal history and his cooperation with police. (Cal. Rules of Court, rule 4.409 [relevant criteria will be deemed to have been considered by the sentencing judge unless the record affirmatively reflects otherwise].) The trial court did not abuse its discretion in imposing consecutive terms.

### B.      Right to jury trial

Defendant next argues that consecutive sentences violate his Sixth Amendment right to jury trial because the jury is required to make findings of aggravation and mitigation before imposing consecutive sentences. This argument has been rejected time and again. (*Oregon v. Ice* (2009) 555 U.S. 160, 173; *People v. Capistrano* (2014) 59 Cal.4th 830, 884.) A trial court may consequently "take into account [its] own factual findings with regard to the defendant's conduct" in making sentencing determinations. (*In re Coley* (2012) 55 Cal.4th 524, 557-558.)

### C.      Cruel and/or unusual punishment

Finally, defendant attacks his sentence of 180 years to life arguing that it is effectively a sentence of life without the possibility of parole. Such a sentence for a first time offender, he argues, is cruel and/or unusual in violation of the Eighth Amendment of the U.S. Constitution and article I, section 17 of the California Constitution. We disagree.

The People argue that defendant has forfeited this claim for failure to object during sentencing. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) We agree, but even if he had not forfeited the issue, this claim would fail.

The Eighth Amendment's prohibition against "cruel and unusual punishment" contains a "narrow proportionality principle" that forbids extreme sentences that are "grossly disproportionate to the crime." (*Ewing v. California* (2003) 538 U.S. 11, 20; *Harmelin v. Michigan* (1991) 501 U.S. 957, 996-997.) In California, the Constitutional protection prohibits "cruel *or* unusual punishment" (Cal. Const., art. I, § 17, italics added;

10

*People v. Murray* (2012) 203 Cal.App.4th 277, 285), and a reviewing court uses three criteria to determine whether a penalty is "'"so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (*People v. Boyce* (2014) 59 Cal.4th 672, 721, quoting *In re Lynch* (1972) 8 Cal.3d 410, 424, italics omitted; *Leon*, *supra*, 181 Cal.App.4th at p. 469.) These criteria are: (1) the nature of the offense and offender, with emphasis on his danger to society; (2) the penalty imposed compared with the penalties for more serious crimes in California; and (3) the punishment for the same offense in other jurisdictions. (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806.) Whether a sentence is cruel and/or unusual is a question of law subject to independent review, viewing the facts in a light most favorable to the judgment. (*People v. Em* (2009) 171 Cal.App.4th 964, 971.)

Defendant focuses on the second criterion, arguing that in California his penalty is only exceeded by that for first degree murder (25 years to life without the possibility of parole or death, § 190, subd. (a)), and is significantly more than penalties for more serious and violent felonies such as second degree murder (15 years to life, § 190, subd. (a)), kidnapping (three to eight years, § 208, subd. (a)), and rape (three to eight years, § 264, subd. (a)). This argument is unconvincing as it seeks to compare defendant's total sentence for eight felony convictions with the punishment for a single offense of other serious crimes. (*People v. Cooper* (1996) 43 Cal.App.4th 815, 826.) We accordingly do not find defendant's sentence to be disproportionate when compared to other crimes that result in substantial sentences. (See, e.g., *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1093-1094 [15 years to life for a conviction of a single lewd act with a 12 year old who became pregnant not cruel and/or unusual]; *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231 [135 years to life for conviction of 17 sexual offenses against a minor not cruel and/or unusual].)

Defendant was a man regarded as a healer, who preyed on a vulnerable and innocent victim from the time she was a baby. He used his position of authority and trust with Jennifer's parents to systematically isolate, threaten, and sexually abuse Jennifer

11

through regular visits to their home over the span of eight years. The harm defendant inflicted on Jennifer and her family is great; and his danger to other potential victims is high. His sentence is neither shocking nor offensively disproportionate to his crimes.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST