Filed 11/10/15  P. v. Scott CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040176 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 179796) |
| v. | |
| JAYE RAMON SCOTT, JR., | |
| Defendant and Appellant. | |

Defendant Jaye Ramon Scott, Jr., is currently serving a "Three Strikes" sentence. He filed a petition for resentencing under Penal Code section 1170.126.[1]  Although he was eligible to be resentenced, the trial court exercised its discretion to find that resentencing him "would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) and denied his petition.

Defendant appeals from the trial court's denial of his petition, arguing: (1) substantial evidence does not support the court's conclusion that resentencing him would pose an unreasonable risk of danger to public safety, (2) the court failed to understand and consider certain mitigating factors that showed he was not an unreasonable risk, (3) the court failed to consider postrelease conditions that would mitigate any risk and failed to consider the fiscal impact of his incarceration, (4) the court applied the wrong legal standard when determining that he should not be resentenced, and (5) the trial court erred by failing to obtain a supplemental probation report prior to

[1] Unspecified statutory references are to the Penal Code.

denying the petition. In a supplemental brief, defendant argues that reversal is also required because section 1170.18, enacted in November 2014, changed the definition of "unreasonable risk of danger to public safety" as used in section 1170.126. We find no merit in any of defendant's arguments and affirm the order denying his petition for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 29, 1994, Sherry Cann and her son, Nathan, were walking on a street.[2] They suddenly heard the victim, Sharon Llewellyn, shout, "stop, thief." Sherry and Nathan saw defendant running towards them with a purse tucked underneath his arm. Nathan attempted to grab the defendant but failed. Nathan gave chase, but a few blocks later defendant was picked up in a car driven by his wife, Linda Scott. Nearby, Nathan retrieved several items that had dropped from Llewellyn's purse.

Llewellyn had attempted to chase after defendant. She eventually caught up to Sherry, and Sherry and Nathan drove her home at her request. Llewellyn was experiencing chest pains, so her family members called 911. Llewellyn died of a heart attack approximately one hour after the theft.

Nathan told officers the license plate number of the car that had picked defendant up. After tracing the license plate, officers arrived at defendant's apartment, where Linda consented to a search. Linda told officers that she had seen defendant going through a purse after they arrived home. Officers found Llewellyn's purse in a dumpster in the parking lot of the apartment complex. Nathan and Sherry identified defendant, and Nathan was able to identify defendant's car.

On April 24, 1995, defendant was charged by information with murder (§ 187), grand theft (§§ 484, 487, subd. (c)), petty theft with a prior conviction (§ 666), and

---

[2] Some of the witnesses and parties share the same surname, so we use their first names for clarity.

robbery (§§ 211, 212.5, subd. (b)).  It was further alleged that defendant had three prior strike convictions and had served four prior prison terms.  (§§ 667, subds. (b)-(i), 667.5, subd. (b).)

On December 21, 1995, defendant entered into a negotiated disposition and pleaded no contest to involuntary manslaughter and grand theft.  He also admitted two prior strike convictions that qualified as two prior serious felony convictions and admitted that he had served two prior prison terms.  The trial court sentenced him a total term of 35 years to life, which included two determinate five-year prison terms for his two prior serious felony convictions.

Both of defendant's strike priors were for convictions of robbery.  The first strike was committed in 1987.  There, defendant grabbed the victim's purse and hit her on the side of the face.  The second strike offense occurred in 1990, when defendant was still on parole for the first offense.  In that case, defendant yanked a necklace off the victim's neck after she refused his offer to pay $20 for it.

On January 14, 2013, defendant filed a petition for resentencing under section 1170.126.

The People conceded that defendant's offenses rendered him eligible for resentencing but opposed the petition, arguing that the court should exercise its discretion to find that resentencing him would pose an unreasonable risk of danger to public safety.

The People attached records of defendant's prison records, which included three serious prison rules violations.  In August 1997, defendant was found to have committed mutual combat in the prison yard.  In June 1998, defendant was found in possession of inmate manufactured alcohol.  In March 2002, defendant was found to have used state property to type personal letters and admitted giving the letters to another inmate to sneak out without permission.  Defendant's prison record also contained information regarding

3

instances where he did not fully comply with prison rules, including an instance when he failed to report to work.

In December 2009, defendant was validated as a Black Guerrilla Family (BGF) gang member or associate, a finding which he disputed. In 2011, defendant requested to review his central file. During the review, defendant became agitated and accused prison staff as placing the "BGF" label on all black inmates. The correctional officer described defendant as committing a "racially verbal assault" during that incident.

Defendant had previously admitted to being addicted to crack cocaine when he was first admitted to prison. At that time, he said he had no interest in pursuing substance abuse counseling programs.

However, defendant did pursue rehabilitation programs during the course of his incarceration. He completed anger management programs and substance abuse programs. In support of granting the petition for resentencing, defendant submitted a letter indicating he had been accepted into the San Jose Salvation Army adult rehabilitation center. He also asserted that he would have the support of his two daughters.

On August 5, 2013, defendant filed a motion requesting that the court either grant the petition for resentencing or order a jury trial on the petition for resentencing. The People opposed the motion.

A week later, the court held a hearing on the motion requesting a jury trial and the petition for resentencing. The court denied defendant's request for a jury trial.

During the hearing, an expert on the BGF prison gang testified about the history of the gang and the violence it perpetrates in communities. One of defendant's daughters testified that she would support her father if he was released.

After considering all the evidence, the court noted that it believed defendant's third strike could have been charged as a robbery, a disqualifying offense, based on the

4

factual circumstances of the crime. However, the court noted that by itself this could not be a reason for denying the petition, because defendant was not actually convicted of a robbery. Therefore, defendant was eligible to be resentenced. Nonetheless, the court stated that the circumstances of defendant's offense constituted evidence that it could consider in making its dangerousness determination.

The court further stated that it did not think it needed to decide whether defendant had been correctly validated as a BGF gang member or associate, because "[t]here is a lot more about prison gangs that have to do with what occurs in prison than there is with what occurs on the streets." However, the court noted that in 2011, when defendant was discussing his BGF validation with correctional staff, he had become verbally abusive towards them. Further, defendant's interactions with correctional officers and other law enforcement personnel demonstrated that although he had completed anger management courses, they had not worked.

Lastly, the court found that defendant's rehabilitation, though commendable, was recent and short-lived. Therefore, it denied his petition after finding he would pose an unreasonable risk to public safety if resentenced.

Defendant appealed.

## DISCUSSION

1. *The Denial of Defendant's Petition*

### A. Statutory Background

In the November 6, 2012 election, California voters approved Proposition 36, the so-called Three Strikes Reform Act of 2012 (hereafter the Reform Act). Prior to the passage of Proposition 36, the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) required that a defendant convicted of two prior serious or violent felonies be subject to a sentence of 25 years to life upon conviction of a third felony. As amended by the Reform Act, section 1170.12, subdivision (c)(2)(C), and section 667, subdivision (e)(2)(C), now

5

mandate that a defendant with two or more strikes who is convicted of a felony that is neither serious nor violent be sentenced as a second strike offender (unless certain exceptions apply).

The Reform Act also added section 1170.126, which allows eligible inmates who are currently subject to 25-years-to-life sentences under the Three Strikes law to petition the court for resentencing. "Section 1170.126, subdivisions (a) and (b), broadly describe who is eligible to file a petition and to be resentenced. Subdivision (a) of section 1170.126 states: 'The resentencing provisions under this section and related statutes *are intended to apply exclusively* to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, *whose sentence under this act would not have been an indeterminate life sentence*.' " (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 598.) "Subdivision (b) of section 1170.126 states: 'Any person serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12 upon conviction, whether by trial or plea, of a felony or felonies *that are not defined as serious and/or violent felonies* by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7, *may file a petition for a recall of sentence*. . . .' " (*Id.* at p. 599.)

An eligible prisoner "shall be resentenced" as a second strike offender unless the court determines that resentencing him or her "would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

### B. Substantial Evidence

First, defendant argues substantial evidence does not support the court's conclusion that he would pose an unreasonable risk to public safety if resentenced. He argues that we should review the trial court's decision for "substantial evidence that

6

resentencing [him] would unreasonably threaten public safety." Defendant errs in his characterization of the applicable standard of review.

Correctly stated, the trial court does not need to find substantial evidence that defendant would pose an unreasonable risk of danger to public safety. Rather, whether a defendant poses an unreasonable risk of danger to public safety is a *discretionary* decision that the trial court must make based on the facts presented in the case. However, the facts considered by the trial court must be established by the People by a preponderance of the evidence.

On appeal, we review the court's finding of an unreasonable risk of danger for an abuse of discretion. However, we apply a substantial evidence standard of review to the facts or evidence supporting the court's finding. Therefore, a factor relied on by the court that is not supported by a preponderance of the evidence cannot form the basis of the court's determination. (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [holding that a trial court abuses its discretion when its factual findings are not supported in the record].) With the correct standard of review in mind, we turn to defendant's arguments regarding the sufficiency of evidence.

First, defendant argues that the trial court improperly characterized the facts surrounding his taking of Llewellyn's purse. He argues there is no substantial evidence that he physically took the purse from Llewellyn, therefore committing an act amounting to a robbery. We agree with defendant's claim on this point.

Section 1170.126, subdivision (g)(1) specifies that a court may consider a petitioner's criminal conviction history including the types of crimes committed and the extent of injury to victims. Also, section 1170.126, subdivision (g)(3) broadly provides that a court may consider "[a]ny other evidence [that] the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an

7

unreasonable risk of danger to public safety." Therefore, the circumstances of defendant's most current offense certainly falls within either of these categories.

However, a problem arises because there is no evidence in the record to support the court's characterization of defendant's third strike offense. Defendant pleaded no contest to the allegations, and the only information pertaining to the offense in the record is the summary provided in the probation report, which recounted the circumstances of the crime based on facts taken from a police report. The probation report does not contain a statement of the victim's version of the events. The report summarized that eyewitnesses saw defendant running with the purse. There is nothing in the report indicating that defendant physically took the purse from the victim. And, it does not appear that defendant ever admitted he grabbed the purse from the victim's person. In defendant's version of the events, he took the purse from a flower pillar. Based on this record, substantial evidence does not support the court's factual finding that the crime committed amounted to an assault or a robbery.

However, even though the court erred in its characterization of the circumstances of defendant's third strike, the error was not prejudicial, because it is not reasonably probable defendant would have achieved a more favorable result absent the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) During the hearing on the petition, the court reiterated that its focus was to evaluate whether defendant posed a *present* risk to public safety and noted the remoteness of defendant's prior offenses. Although the trial court noted that it considered the circumstances of defendant's third strike, that by itself was not the determinative factor in its decisionmaking process. Aside from the factual circumstances of defendant's third strike offense, the court focused on a number of legitimate concerns that were supported by the record.

First, the court found that defendant's lengthy prior record was probative of his risk of danger to public safety if released. Unlike defendant's third strike conviction, the

8

court did not mischaracterize the nature of defendant's additional offenses, which included forceful thefts where he punched a victim and yanked a necklace off a victim's neck. And, the court did not abuse its discretion when it considered this information, because a defendant's prior criminal conviction history is something the court is entitled to consider under section 1170.126, subdivision (g)(1).

Second, the court concluded that defendant had not taken advantage of programs that could have assisted with his issues, such as his problems with substance abuse. Defendant disagrees with the court's interpretation, arguing that it erroneously ignored the fact that he had addressed his substance abuse problems while incarcerated, which he claims was one of the triggers of his past criminality. Defendant notes that the only time he was found to have abused any substance or used alcohol since he was incarcerated was in 1998, when inmate manufactured alcohol was found in his cell.

However, the record belies defendant's claim that the court did not properly consider his history of substance abuse. More precisely, the court considered defendant's substance abuse history but interpreted the facts in a negative, rather than a positive, light. Prior to the hearing on his petition for resentencing, defendant had drafted a letter to the court, asserting that he had not been aware of programs to assist him with his problems prior to his incarceration. The court disagreed with defendant's characterization of his background, finding instead that defendant's overall history reflected that he was aware of programs that existed to assist him in overcoming his problems but did not take advantage of them. The court noted that defendant had been ordered into treatment for his cocaine addiction and had been dismissed from the program due to his poor attendance the day before he was convicted of his third strike. Additionally, the court negatively characterized the incident where he was found to be in possession of inmate manufactured alcohol, commenting that this incident occurred shortly after he began his prison sentence. Although there was no current evidence that

9

defendant was using drugs or abusing alcohol, he had also been living in a structured and controlled environment in prison. Defendant had completed some substance abuse programs, but there was little affirmative evidence that he would be able to avoid controlled substances outside the confines of prison.

The court also found that defendant's rehabilitation was current and had been short-lived. Again, defendant disagrees with the court's interpretation of the facts, arguing that it erroneously relied on his prison record.

However, the record supports the trial court's conclusion. Defendant verbally lashed out at correctional officers when reviewing his central file in 2011. This outburst happened despite the fact that defendant had completed anger management courses, supporting the court's determination that the anger management courses had not sufficiently rehabilitated defendant. Further, defendant had other incidents of misconduct in prison. In August 1997, defendant was found to have committed mutual combat in the prison yard. In June 1998, he was found in possession of inmate manufactured alcohol. In March 2002, he was found to have used state property to type personal letters and admitted giving the letters to another inmate to sneak out without permission.

In sum, the factors described by the trial court, including defendant's criminal history, his ability to deal with his substance abuse problems, and his performance in prison and ability to manage his anger, support its determination that defendant would pose an unreasonable risk of danger to public safety if resentenced. "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.) The court made its determination based on legitimate

factors that are supported by substantial evidence.  Therefore, we do not find it abused its discretion.[3]

### C. *Failure to Consider Factors in Mitigation*

Defendant further claims that the court failed to consider various factors in mitigation, such as the remoteness of his convictions, his age, and his low CDC (California Department of Corrections) classification score.

In part, defendant relies on cases involving the board of parole hearing's denial of parole to defendants that were reversed or remanded due to inadequate consideration of suitability factors.  For example, in *In re Stoneroad* (2013) 215 Cal.App.4th 596, the appellate court granted the inmate defendant's petition for writ of habeas corpus after concluding the board of parole hearing's decision did not reflect due consideration of statutory and regulatory factors bearing on parole suitability, which it is required to do. (*Id*. at p. 601.)

We decline to consider whether cases involving a board of parole hearing's denial of parole are informative regarding the standard of review to be employed by a trial court considering a petition for resentencing.  However, we do note that here, all of the mitigating factors discussed by defendant on appeal were presented to the court and were part of the trial court's record, including his low CDC classification score.  Furthermore, unlike a parole decision, there is no requirement that the trial court's decision on a petition for resentencing be accompanied with a statement of reason.  Nonetheless, the trial court did state its reasons for denying the petition on the record.  And, it concluded, based on the record before it, that defendant posed an unreasonable risk to public safety.

---

[3] Defendant also notes that his BGF validation was "highly suspect."  However, the trial court stated during the hearing on the resentencing petition that it was not relying on defendant's gang status in determining his risk to public safety.

11

In coming to this decision, the trial court did not expressly touch upon all of the factors that it may have found to have mitigated the risk to public safety. However, we must presume that the court considered all the presented evidence, absent evidence to the contrary. (Evid. Code, § 664; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Essentially, defendant argues that the court erred because it did not accord certain factors the weight he believes they deserve. We disagree. Simply because defendant does not agree with the court's conclusion does not mean the court abused its discretion. And, since the court's decision is supported by factual findings that are in turn supported by substantial evidence, our inquiry must end. Even though there were factors that tended to weigh in favor of resentencing defendant, it was ultimately up to the trial court to determine whether defendant would pose an unreasonable risk of danger to public safety if resentenced. Defendant essentially urges us to reweigh the evidence, which is not our role as the appellate court.

### D. Failure to Consider Postrelease Conditions and the Cost of Imprisonment

Defendant also argues the court erred in failing to consider postrelease conditions that could mitigate any unreasonable risk to public safety. For example, defendant opines that the court has the duty to fashion an appropriate disposition, including additional constraints on his freedom, which could have assuaged its concerns.

We reject defendant's claim that the court failed to consider the mitigating effects of any additional postrelease requirements. Under section 1170.126, subdivision (f), the court must determine whether a defendant will pose an unreasonable risk to public safety *if resentenced as a second strike offender*. Implicit in the court's finding that resentencing defendant would pose an unreasonable risk of danger to public safety is its determination that defendant would pose a risk of danger to public safety even if resentenced and released under conditions such as postrelease community supervision. Although the court here did not specifically state that it considered the mitigating effects

12

of additional conditions on defendant's release, we cannot presume that it failed to do so. And, again, we must presume that it did, since we have no contrary indication. (Evid. Code, § 664; *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.)

Additionally, defendant argues the court failed to take the fiscal impact of his future imprisonment into consideration. However, we fail to see how monetary considerations should factor into a court's determination that resentencing an inmate will pose an unreasonable risk of danger to public safety. Saving money is one of the Reform Act's stated goals. However, the primary purpose of both the three strikes law and Proposition 36 is to protect public safety. (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1036-1037.) The trial court was not required to weigh the potential to reduce costs by releasing inmates like defendant against the need to protect public safety. In essence, the electorate already conducted its own cost-benefit analysis by determining that those inmates whose resentencing would pose an unreasonable risk of danger to public safety should not be released, even if resentencing may provide some cost savings to the state.

### E. *Presumptions and Standards for a Trial Court's Denial of a Petition for Resentencing*

Defendant argues the court abused its discretion, because section 1170.126 creates a presumption that a petitioner's sentence should be reduced.

First, defendant points to the language of section 1170.126, subdivision (f), which states that "the petitioner *shall* be resentenced pursuant to [a second-strike term] *unless* the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Italics added.) He argues that the "shall/unless" language establishes a presumption in favor of resentencing a petitioner that can only be overcome if the court finds the petitioner would present an unreasonable risk of danger to public safety.

To support this proposition, defendant relies on *People v. Guinn* (1994) 28 Cal.App.4th 1130 (*Guinn*), *People v. Murray* (2012) 203 Cal.App.4th 277, and *People v. Ybarra* (2008) 166 Cal.App.4th 1069. These cases all discuss section 190.5, subdivision (b), the juvenile life-without-parole (LWOP) statute. *Guinn* concluded that section 190.5's language and structure, including the use of the word "shall," made it so certain juveniles "*must* be sentenced to LWOP, *unless* the court, in its discretion, finds good reason" to impose a less severe sentence. (*Guinn*, *supra*, at p. 1141.) Therefore, *Guinn* concluded that section 190.5 created a presumptive penalty of LWOP. (*Guinn*, *supra*, at p. 1145.)

The cases relied on by defendant, including *Guinn*, were disapproved of by our high court in *People v. Gutierrez* (2014) 58 Cal.4th 1354. The *Gutierrez* court stated: "Contrary to *Guinn*, . . . our review of the text and history of section 190.5[, subdivision] (b) does not lead us to conclude that the statute establishes a presumption in favor of life without parole. The text of the statute appears ambiguous on this point. As noted, section 190.5[, subdivision] (b) says the penalty for special circumstance murder committed by a 16- or 17-year-old offender 'shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life.' It is not unreasonable to read this text, as *Guinn* did, to mean that a court 'shall' impose life without parole unless 'at the discretion of the court' a sentence of 25 years to life appears more appropriate. [Citation.] But it is equally reasonable to read the text to mean that a court may select one of the two penalties in the exercise of its discretion, with no presumption in favor of one or the other. The latter reading accords with common usage. For example, if a teacher informed her students that 'you must take a final exam or, at your discretion, write a term paper,' it would be reasonable for the students to believe they were equally free to pursue either option. The text of section 190.5[,

14

subdivision] (b) does not clearly indicate whether the statute was intended to make life without parole the presumptive sentence." (*Id*. at p. 1371.)

We find that *Gutierrez*'s interpretation of section 190.5's syntax is equally applicable to section 1170.126, subdivision (f)'s syntax. We therefore disagree with defendant's interpretation that the "shall/unless" construction used in section 1170.126, subdivision (f) creates a presumption in favor of resentencing. It is true that a court faced with an eligible petition for resentencing is required to resentence the petitioner unless it finds that doing so would pose an unreasonable risk of danger to public safety. However, this in no way means that its discretion is limited in that it can only find dangerousness in circumscribed circumstances. Rather, a trial court is vested with the discretion to *either* resentence a petitioner *or* conclude a petitioner poses an unreasonable risk of danger based on the totality of the circumstances presented in each case.

Nonetheless, defendant persists in his claim that section 1170.126 creates a presumption in favor of resentencing. He insists that a hearing on a section 1170.126 petition is essentially the converse of a *Romero*[4] hearing and therefore establishes that a court may only deviate from the newly established "norm" of a second-strike sentence in extraordinary cases when there is proof of current dangerousness.

In *People v. Carmony* (2004) 33 Cal.4th 367, our Supreme Court discussed the legislative purpose behind the three strikes law and the standards sentencing courts should follow in order to determine whether to strike or vacate a prior strike. It noted that "the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Id*. at p. 378.)

---

[4] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

15

As the Fifth Appellate District explained in *People v. Blakely* (2014) 225 Cal.App.4th 1042, "[t]he purpose of the three strikes law has been variously stated as being ' "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses" ' [citation] and 'to promote the state's compelling interest in the protection of public safety and in punishing recidivism' [citation]. Although the [Reform] Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the [Reform] Act.' " (*Id.* at p. 1054.)

Since public safety remains the key focus of the Reform Act, we disagree with defendant's assertion that a decision on a section 1170.126 petition must be subject to the same scrutiny as a *Romero* hearing. A section 1170.126 petition is not the converse of a *Romero* hearing, and section 1170.126 does not establish a new sentencing norm.

Additionally, we reject defendant's claim that the trial court should deny an eligible petition for resentencing only in extraordinary cases. This would undermine the intent of the voters in passing the Reform Act—to preserve public safety.

### F. Burden of Proof and Right to a Jury Trial

Next, defendant claims the requisite burden of proof of dangerousness is beyond a reasonable doubt, because the trial court's dangerousness finding effectively increases his maximum sentence from nine years four months (if he was resentenced as a second-strike offender) to 25 years to life. He also claims the court erred in denying his request for a jury trial on the petition.

The Second Appellate District addressed this very issue in *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279 (*Kaulick*), and determined that the applicable burden of proof is preponderance of the evidence.[5] (*Id.* at pp. 1301-1305.)

---

[5] The Fifth Appellate District concurred with *Kaulick*'s conclusion in *People v. Blakely*, *supra*, 225 Cal.App.4th 1042.

16

We agree with *Kaulick*. The United States Supreme Court has held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.)

In *Kaulick*, the appellate court noted that the maximum sentence that Kaulick was subject to was, and will always be, an indeterminate life term. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1303.) And, although the Reform Act "presents [Kaulick] with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (*Ibid.*)

*Kaulick* relied on *Dillon v. United States* (2010) 560 U.S. 817. In *Dillon*, the court considered whether a two-step sentence modification procedure implicated the Sixth Amendment. (*Id.* at pp. 826-829.) If eligible for a sentence modification, a reduction in the defendant's sentence could be ordered. (*Id.* at pp. 826-827.) *Dillon* concluded that "a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304.) *Kaulick* found *Dillon*'s rationale to be equally applicable to the Reform Act, since "[t]he retrospective part of the [Reform] Act is not constitutionally required, but an act of lenity on the part of the electorate." (*Ibid.*) The resentencing scheme is not plenary, instead it provides for a proceeding where the original indeterminate life term can be modified downward. *Kaulick* concluded that this did not implicate any Sixth Amendment issues, and therefore

17

there was no requirement that the facts underlying a dangerousness finding be established beyond a reasonable doubt.

We follow the reasoning set forth in *Kaulick* and find that there is no requirement that the dangerousness finding be established beyond a reasonable doubt. Accordingly, we conclude the trial court did not err in denying defendant's motion for a jury trial, because a Sixth Amendment right to a jury trial does not arise in a petition for resentencing under section 1170.126, subdivision (f).

2. *Failure to Obtain a Supplemental Probation Report*

Defendant claims the court should have obtained a supplemental probation report prior to denying his petition for resentencing. Defendant argues that a supplemental probation report was necessary, because the decision to resentence him is functionally the equivalent of a decision to place him on probation.

Defendant has forfeited this argument. He did not request a supplemental probation report below, nor did he object to proceeding without one.

Defendant claims his lack of objection does not waive or forfeit his claim, citing to *People v. Dobbins* (2005) 127 Cal.App.4th 176, 178 (*Dobbins*). However, *Dobbins* is inapplicable, because the defendant there remained eligible for probation upon remand. (*Id*. at pp. 181-182.) Therefore, a probation report was mandated by law, unless a written or oral stipulation was entered by the prosecuting and defense attorneys. (§ 1203, subd. (b)(4).) Since the attorneys did not waive or stipulate to proceed without the probation report, the *Dobbins* defendant did not forfeit his claim of error even though he failed to object below. (*Dobbins*, *supra*, at p. 182.)

Here, defendant would not have been eligible for probation as a second strike offender, a fact that defendant acknowledges. (§§ 667, subd. (c)(2), 1170.12, subd. (a)(2); *People v. Johnson* (1999) 70 Cal.App.4th 1429, 1431-1432.) Accordingly, unlike *Dobbins*, a waiver or stipulation to proceed without a probation report was not

18

required below. Therefore, defendant's failure to request a supplemental probation report or object to its omission forfeits his claim on appeal. (*People v. Murray*, *supra*, 203 Cal.App.4th at p. 289, fn. 12; *People v. Johnson*, *supra*, at pp. 1431-1432.)

Regardless, we would reject defendant's contention even if we were to consider it on the merits. The Fifth Appellate District considered and rejected a similar argument in *People v. Franco* (2014) 232 Cal.App.4th 831 (*Franco*), and we agree with the *Franco* court's reasoning.

As we previously discussed, when a defendant is convicted of a felony and is eligible for probation, referral of the matter to the probation officer for an investigation and report is mandatory. (§ 1203, subd. (b)(1); Cal. Rules of Court, rule 4.411(a).) However, referral for a report is *discretionary* when a defendant is ineligible for probation, except when the amount of a restitution fine must be calculated. (§ 1203, subd. (g); Cal. Rules of Court, rule 4.411(b).)

Since defendant is not eligible for probation even as a second strike offender, "neither statute nor rule of court required the trial court to obtain a supplemental report." (*Franco*, *supra*, 232 Cal.App.4th at p. 834.) Therefore, we "decline to impose a mandatory duty on the trial court where the statutes and rules of court granting authority for probation reports do not so provide."[6] (*Id.* at p. 835.)

3. *The Definition of an "Unreasonable Risk of Danger to Public Safety"*

### A. Background

In November 2012, voters enacted section 1170.126 as part of the Reform Act. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167.) As discussed above, section 1170.126, subdivision (f) specifies that a petitioner shall be resentenced unless "the court, in its discretion, determines that resentencing the petitioner would pose an

---

[6] Based on the foregoing, we need not address defendant's claim of prejudice.

19

unreasonable risk of danger to public safety." Section 1170.126 does not contain a definition of the phrase "unreasonable risk of danger to public safety," but does include a nonexclusive list of criteria a court may consider in making a determination of dangerousness. (§ 1170.126, subd. (g).)

Two years later in November 2014, voters enacted Proposition 47, the "Safe Neighborhoods and Schools Act." The Legislative Analyst described Proposition 47 as having three main aspects: reducing penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes, allowing certain offenders previously convicted of such crimes to apply for reduced sentences, and requiring state savings resulting from the measure be spent to support various services.[7] (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35.) Proposition 47 does not mention the Reform Act.

However, it did establish procedures for certain offenders to apply for a reduced sentence. Section 1170.18, subdivision (a) provides that defendants convicted of certain nonserious, nonviolent property and drug felonies can file a petition requesting resentencing. A court that receives the petition shall resentence the petitioner "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

Pertinent here, section 1170.18, subdivision (c) provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

---

[7] We take judicial notice of the text of Proposition 47 and its accompanying ballot materials. (Evid. Code, §§ 452, 459.)

20

### B. Analysis

Defendant argues the narrow definition of an unreasonable risk of danger to public safety set forth in section 1170.18, subdivision (c) applies to the phrase as used in section 1170.126.[8]  We disagree.

"We recognize the basic principle of statutory and constitutional construction which mandates that courts, in construing a measure, not undertake to rewrite its unambiguous language.  [Citation.]  That rule is not applied, however, when it appears clear that a word has been erroneously used, and a judicial correction will best carry out the intent of the adopting body." (*People v. Skinner* (1985) 39 Cal.3d 765, 775.) Whether the use of a word is the result of a drafting error "can only be determined by reference to the purpose of the section and the intent of the electorate in adopting it." (*Id.* at p. 776.)

Based on the intent of the electorate in passing Proposition 47, we are compelled to conclude that the word "Code" in section 1170.18, subdivision (c) was erroneously used in place of the word "Act," to refer to the Safe Neighborhoods and Schools Act. There is nothing to indicate that in passing Proposition 47 the electorate intended to somehow modify or change the Reform Act or section 1170.126.

Defendant disagrees and argues that it is clear from the language of sections 1170.18 and 1170.126 that the electorate intended to modify section 1170.126. Notably, defendant opines that both propositions sought to improve public safety.  And, defendant claims that the plain language of Proposition 47 unambiguously applies the definition of an unreasonable risk of danger to public safety to Proposition 36. Furthermore, when Proposition 47 was enacted, the only other instance in the Penal Code

_____

[8] This issue is currently pending review in the California Supreme Court in *People v. Valencia* (2014) 232 Cal.App.4th 514 (review granted Feb. 18, 2015, S223825).

21

where the phrase "unreasonable risk of danger to public safety" was used was in Proposition 36.

We find defendant's arguments unpersuasive. The ballot materials and proposed statutory language accompanying Proposition 47 contain no reference to Proposition 36. Additionally, there is no indication that the drafters intended Proposition 47 to have any impact on offenders who did not commit the specified nonserious, nonviolent property or drug crimes described in the Safe Neighborhoods and Schools Act. Furthermore, the ballot materials emphasized that the resentencing provisions set forth in Proposition 47 were limited to those persons serving sentences for the specified nonserious, nonviolent drug or property crimes. It strains credulity to imagine that Proposition 47 was also somehow intended to modify Proposition 36. If it was, it was a particularly roundabout method of doing so.

Second, Proposition 36 requires that petitions for resentencing be brought within two years of its passage unless the trial court concludes the existence of good cause for filing a late petition. (§ 1170.126, subd. (b).) By the time Proposition 47 took effect, the two-year period for filing a petition under section 1170.126 was nearly over. It is illogical to conclude that Proposition 47 was meant to modify Proposition 36 when most of the petitions filed under section 1170.126 were already adjudicated and decided by that time.

Third, section 1170.18 itself specifically provides that, "Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this act." (§ 1170.18, subd. (n).) Applying the definition of "unreasonable risk of danger to public safety" from section 1170.18 to section 1170.126, would undoubtedly diminish the finality of those Three Strikes judgments that do not involve a nonserious, nonviolent property or drug crime.

22

Based on the foregoing, we conclude that section 1170.18, subdivision (c) contains a drafting error that must be judicially corrected. Under a corrected reading of the statute, we find that the word "Code" must be read as "Act." Accordingly, we find no merit in defendant's argument that the order denying his petition must be reversed.[9]

## DISPOSITION

The order denying defendant's petition for recall of sentence is affirmed.

---

[9] Based on our conclusion that Proposition 47's definition of an "unreasonable risk of danger to public safety" is inapplicable to section 1170.126, we need not address defendant's claim regarding the retroactivity of that definition. That issue is also presently pending review in the California Supreme Court. (*People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted Feb. 18, 2015, S223676.)

23

_____
                                        Walsh, J.[*]


WE CONCUR:




_____
       Rushing, P. J.




_____
       Elia, J.




People v. Scott
H040176

_____

     [*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.